All right, our final case for the day is 24-1468 Travelers Casualty v. Jeld-Wen Holding. And for appellant, we have Mr. Farnell and Mr. Judge. All right, yes sir. Good morning. May it please the Court, Mike Farnell appearing today for Gary Michael, Brooks Millard, Kirk Heshigian, Mark Beck, and Jeld-Wen Holding, Inc. This is another in a long line of so-called related claim insurance coverage disputes in which the question is whether successive lawsuits against an insured are sufficiently alike that they ought to be deemed one and the same claim dated back to the first lawsuit, thus absolving the insurance carrier of its coverage obligation. Well, how are we to define the common nexus? Common nexus, again, under North Carolina law, we would look to an ordinary meeting because that phrase or term is not defined in the policy. Common nexus means a shared interconnection, some sort of mutual connection. And when you read that in context, Your Honor, it is in this litany of words that includes causally connected causes. You know, we've got an exclusionary language here that is all at once this big and purportedly this big, and it's that at the same time if travelers is to be believed. Here, when you're talking about causally connected causes or anything that speaks to a causal interconnection, and we're dealing with antitrust litigation backwards in time beginning in 2012, and then we've got this later 2020 securities action, you cannot have a causal interconnection between an antitrust claim, which is, as the Court knows well, an alleged conspiracy to restrain trade, and a securities violation, which is an alleged misrepresentation, in this case under the Securities Exchange Act of 1934. So we have this kind of fundamental threshold that we have to get past here, which is can these things be deemed sufficiently alike when they can't cause one another? And, you know, one of the things that travelers said in the briefing was that the antitrust allegations were a predicate for the securities violations. But that's not true because if one assumes that all of the representations about the pending antitrust litigation were accurate, there couldn't have been a securities claim. It requires an intervening alleged wrongful act to create securities liability. Otherwise, it can't exist. And one of the real problems here is that we've got four human beings who have been sued jointly and severally for millions and millions and millions of dollars worth of personal liability. They have never been sued before. This is their first lawsuit. If an executive of a publicly held company who has no choice but to answer questions of investors and analysts, if that executive is asked to comment on prior or pending litigation, under travelers' view of the world, that executive will always be uninsured because the answer will always merge back in to the prior litigation the comment is about. Was the insurer given notice of the first antitrust action back in 2016? There was no notice back in 2016. Does that make any difference? I'm sorry? Does that make any difference? Well, no, I don't. The point here, I think, Your Honor, is that what Travelers has done is focus primarily on a preceding claim exclusion. And the argument is not that it went back to 2018, 2019, or 2016, just that it wasn't Travelers. It just predates. It predates at some point in time prior to Travelers' policy period. And one of the reasons why I think your question, you know, raises a very good issue is because there was an argument below that the first four insurers, all of whom agree with these insurers' interpretation of these exclusions, Arch, the primary carrier who authored the provision at issue, AIG, Excel, and STAR, $40 million worth of claim decisions and actual claim payments. They all agree that this is a covered loss in the 2020 period. The argument below was that it didn't really matter to them. It was six to one, half a dozen to the other. They were going to pay their $40 million in one period or the other. But what's forgotten in that, the reason that's not accurate, is because they could have taken the position that it dated back to 2016, as your Honor notes. That was the first antitrust piece of litigation under the Clayton Act. These carriers could have but did not, and that would have been a self-interested determination because I don't think they were in the, I know they weren't in the tower back in 2016, certainly not in any similar order. So it is telling that under North Carolina law, we have to be anchored by these principles of insurance coverage, insurance policy interpretation. It's the only way we can really find our way through the morass of words like this. And under North Carolina law, the question is whether the insurers have proffered a reasonable interpretation of policy language. Well, looking at the traveler's language, it's pretty broadly, I mean, interrelated wrongful acts is pretty, in their policies, is pretty broadly defined, isn't it? It's defined in the way that I have described earlier. It is defined with a litany of words, and that litany of words includes things like in any way related to. It uses the word interrelated and the word related at the same time in the same provision, defining one but not defining the other. We will freely concede that there is an interpretation of this exclusionary language. It is exceptionally broad, and that's the problem with all related claim cases. It's all about perspective. Are you looking at this from 10 feet, from 1,000 feet, or from 10,000 feet? Because the answer is different depending on how granular you are. Is there a case that you can cite to in North Carolina or in the Fourth Circuit that says this particular language is ambiguous? I think what you're arguing is it's ambiguous, and therefore we construe it against the insurance company. Is that right? That's correct. And so this particular language, does it appear in any case, and has it been found to be ambiguous? Because it does seem to be incredibly broad, and the words are pretty clear. One thing I'll say to sort of set the stage here is that under North Carolina law, the grant of coverage is construed liberally, broadly in favor of this.  To answer Your Honor's question, you know, we pointed to the town of Mocksville decision, which itself contains both the term interrelated and the term related. In the same policy, the court there went through the analysis. In that case, the exclusion, the word, in which case we're referring to where the court said you define related, but you didn't define in the policy, but not in the provision, you didn't define interrelated, and that's why the court said that there was a problem in terms of it being ambiguous. But here it's a little bit different because they do define interrelated. And in that provision where the exclusion is, I think it says all claims for the same wrongful act, any interrelated wrongful acts, or the same or related facts, circumstances, or situations shall be deemed to be a single claim. So how is that not different because it's in the exclusion, it's specifically in this exclusion, and then it defines what interrelated wrongful acts are. But it does not define related. So in town of Mocksville. But related is not in the exclusion provision. It's in the policy. No, it's in the exclusion. The term related or in any way related, related facts or circumstances, that's the problem with the way it's drafted. It's a garden salad exclusion, which says interrelated wrongful acts means this collection of things, this common nexus of causally connected causes, among other things. And then after all that, it says related facts or circumstances, situations or events. It's got everything in it together. And so I really would commend to the court's reading town of Mocksville, which has this same problem, but just the inverse. Related is defined there, but interrelated is not. But the problem is the same, which is if we have these competing standards in the same exclusion, what do we do with that? Okay? Now, I would submit to the court that there is one straight line answer that avoids the problem that has plagued court after court after court in trying to bring reason to these exceptionally undefined and malleable exclusionary provisions. And that is the district court and travelers introduced this Highwoods decision, which is an Eighth Circuit decision that applies North Carolina law. And you agree we have not adopted that decision? I understand. I understand. The point, though, is that as a textual matter, that court went through the analysis. When you're talking about the question of whether one lawsuit later in time should be merged back and joined with a lawsuit later in time, we're looking at the policy in effect during 2020. Okay? That's the policy we're reading and applying. In order to have a related claim analysis, we have to have two claims, and that's a defined term. Okay? If you don't have claims to compare, then there isn't a proceeding claim analysis to undertake. A claim against a human being needs to be a claim against that director and officer. Let's not forget this is a $90 million tower of directors and officers' insurance coverage. These folks have never been sued before. There was no claim against them. Only a dedicated securities claim coverage is the only coverage available to a publicly traded company. They're not covered for antitrust wrongful acts. They are covered for securities claims only. Before 2020, there was no securities claim. So the question is, was there any other claim to compare at all? If there was no claim against any executive and there was no securities claim against the organization, there was no claim at all, and we never have to get into this morass of what to do with an exclusion so vaguely drafted. So are you saying that you're asking us to make a general rule that securities and antitrust claims are not related? Is that what you're asking us to do, or are you basing your argument on the particular claims in this case? What I am suggesting to the court is that the related claim analysis is never undertaken in the first place because there are not two claims to compare to one another. That's threshold determination. So you're saying that no two claims, but there are different legal causes of action can ever be related? What if it was a tort claim, for example? What I am suggesting is that in a securities claim, when we're talking about dedicated securities claim coverage, if we're going to get into the analysis, what does that director and officer do? The question under a securities cause of action is the fact of the misrepresentation to prospective investors. What Travelers wants to do is to convert that into the substance of the misrepresentation, and, again, what that will do to dedicated, purchased, sold, marketed securities claim coverage is that the minute that that executive answers an analyst's question about a prior claim, according to Travelers, it will always merge into that prior claim. It vitiates this securities claim coverage. It will always become something else. Well, under this language, but the coverage could be drafted differently. But under this particular language, that's the argument. It's very broad. The argument is that it is both narrow and broad at the same time. We have to give meaning to all of the words in the exclusion if we can. Common nexus means causal interconnection. We go to the dictionary, and we look up terms in the dictionary when phrases or terms are undefined in the policy. Here, a connection of causes means that as narrowly construed, which North Carolina law requires, the question is whether the antitrust conduct, that alleged conduct, could give rise to a securities violation. Conversely, could the Securities Wrongful Act, the alleged misrepresentation here, give rise to antitrust liability? My understanding is, I think it's in one of the suits. I think it's the direct purchaser suit. Isn't that the argument is that the officers and directors were responsible, even though they're not named, but the allegations of liability were against the officers and directors? No. So the complaint does not allege that the officers and directors were liable for the information that they were? No. In fact, the antitrust allegations do not sue anybody, as your Honor notices, but the allegations against the individuals giving rise to the alleged antitrust violations were a completely different group of people. They were the former executives of Masonite who also worked for Jeldwin. That was the good old boys network referenced in all of those antitrust allegations. These four individuals are not named in those antitrust allegations. And who are the four individuals you're referring to? Mark Beck, Kirk Hashigian, Brooks Millard, and Gary Michael. Kirk Hashigian is mentioned in the first 2016 Clayton Act case. The other three are mentioned nowhere. And that is, again, critical because we talk about reasonable expectations under North Carolina law, and three months ago the North Carolina Supreme Court issued a very, very significant decision in North State Delhi, which we cited to the court in a memorandum of supplemental authorities. And that court emphasized that when you have slippery, undefined, malleable terms, it's up to the insurance company to draft more clearly. It's not for the court to try to bring order to a textual word salad. Here, again, there is three separate – I can see I'm out of time. I'll finish my answer. There are three separate insuring agreements in this policy, what we call side A, side B, and side C. The first two of those are for the individual directors and officers, claims against them. And the third is the claim against the organization, which is, again, just this dedicated securities claim coverage. The individuals are entitled to their own coverage determination. Thank you. Oh, I'm sorry. I don't recall that you answered Judge Brunner's question about is the language ambiguous? We believe that it has to at least be ambiguous. The question under North Carolina law – What does that mean? That means that either as written or as applied to a particular circumstance, it can be subject to more than one reasonable interpretation. And if we've got four insurance companies, all of whom interpret it the way that the insureds do here, in our view, by definition, that must necessarily be reasonable, especially when it's one of the authors of the language at issue. Thank you. Yes, sir, Mr. Judge. Thank you, Your Honor. May it please the Court. Yes, sir. Thomas Judge on behalf of Apelli Travelers Casualty Insurance Company of America. The Court should affirm the District Court's granting a summary judgment in Travelers' favor. It should do so because the undisputed material facts show that the shareholder claims for which jail seeks coverage shares interrelated wrongful acts, as that term is expressly and broadly defined in the insurance contract, and or shares related facts, circumstances, or situations. The policy's unambiguously broad related claims provision then deems the shareholder claims to be first made when the antitrust claims were made or when the circumstances underlying the antitrust claims was noticed to insurers. And that undeniably happened no later than early 2019 before the policy incepted. Do you agree with the appellate's answer to what is a common nexus? I don't, Your Honor. Nexus is a linkage. And later in the definition of interrelated wrongful acts, well, in the definition of interrelated wrongful acts, it includes a common nexus, wrongful acts that have a common nexus of any fact, circumstance, or situation, et cetera, or a series of causally connected facts, circumstances, or situations. Nexus means linkage, as I've read it in the dictionary. And there's a separate provision in the definition of interrelated referring to causal connections, causal series of facts, circumstances, and situations. And the fact is that however you look at it, however, you can look at it causally, they are causally connected. You can look at related facts, circumstances, or situations. And numerous courts have held that that term is by itself unambiguous and includes logical or causal connections. Applying either phrase from the definition, and they're not competing phrases, they're ors, the shareholder claims wrongful acts asserted therein. And those wrongful acts include, as they were necessary, you can read the amended consolidated complaint, and it affirmatively alleges the very antitrust violations at issue in the antitrust actions. It includes a chart of the anti-competitive price increases from 2013 through 2018 showing what was utilized. And that chart was utilized in the antitrust class actions. So what do we do with the contract provision that says security claims are covered? Because the fact that the parties agreed to cover securities claims seems to suggest that these are separate and distinct from other kinds of claims. And securities claims, as my colleague points out, are always based on prior acts that were undisclosed and prior bad acts, presumably like in this case. And it could be any number of types of litigation, not necessarily antitrust litigation here. And so the parties contracted for coverage of securities claims, and that's a separate provision. And so we have these two different provisions, and North Carolina law says, well, if the exclusion applies, then that's your burden to prove that it does. So what do we do with that? So first of all, a securities claim under this policy is a type of claim. And the related claims provision applies to all claims. It doesn't distinguish between just claims and a subset of securities claims. It applies to all claims. And claims are defined to include, for example, a civil proceeding against any insured. So it doesn't matter who the insured is, whether it's the company or an individual, or whether it's a securities claim, it's a claim. So what securities claim would be covered? If securities claims are based on, in general, they're based on failure to disclose or misrepresentations to shareholders, and they're misrepresenting something that happened that was bad in the past, and there was another lawsuit, I mean, when would this not apply? It would not apply in so many circumstances, Your Honor. As you can see, this is one of the first instances where this has come up. Securities claims, yes, look at representations about past conduct, but there's not always a prior claim there existing. In fact, there hardly ever is. They're talking about, hey, you, in your disclosure, you restated your financials. And when you restated your financials, that gave rise to a securities claim. You said that you listed certain risk factors about what could happen in the future, but you already knew that you were experiencing problems with your supply chain. In all these circumstances, in the standard 10b-5 case that you see, there's not a prior claim sitting there on which the 10b-5 claim is predicated, like this one. Here, the securities claim is saying, you violated antitrust laws. It's not saying you didn't disclose the antitrust claims. It's saying you violated antitrust laws as established in these prior cases, and you concealed it from the public. And that very same allegation is in the antitrust claims, in the class actions. They said you concealed, you were in a conspiracy, and you concealed this. And yes, you would. You're not going to tell the investing public, we're making great growth, which is what the securities class action was about. The securities class action was looking at, in the first instance, the registration statement filed in early 2017, which was then talking about revenue growth in 2016 and 15 and 14. And then in the 10k, which is also part of the 10b-5 case, it's talking about financial performance in 2016, and the growth that this company had experienced in the years prior, and explaining that growth based on pricing strategies and quality of products. And the securities plaintiff said, you failed to disclose how you were actually experiencing revenue growth and profit growth was through your anti-competitive conduct, which has been established and alleged in these antitrust actions. I guess you, as the insurer, did you receive notice of the first antitrust action in 2016? We did not. Travelers was not an insurer for GELD at that time. Travelers did not become an insurer for GELD until March of 2019, in the 19-20 time period. And that's why... So was Travelers aware of these other suits when you came in in March of 2019? I don't think the evidentiary record indicates one way or the other, but assuming they were, that's why this policy language is so important. You get to rely upon it. What do you do with your colleague's argument that policy language is ambiguous and therefore we construe... I mean, I look at the words. It is sort of a word salad. And it's difficult to determine what the difference is between the words that seem in and of themselves interrelated. So what do we do with the ambiguity in the contract that we are directed to construe against your client? There is no ambiguity in the contract, Your Honor. The words say, for example, interrelated wrongful acts, mean wrongful acts that have as a common nexus any fact, circumstance, situation, or transaction, cause, or series of causally connected facts, circumstances, situations, transactions, or causes. That's not ambiguous. Courts have applied that language in numerous other cases as unambiguous. And it is unambiguous. But I think the argument is that in the Hunter v. Town, the Town case, is that this is just the inverse of the Hunter case because in that case, interrelated is not defined and related is defined. So how is this case different than the Hunter case? Well, just calling it the inverse doesn't help or indicate that this language is in any way ambiguous. In this case, interrelated is defined. It's defined broadly and it has effectively two different catch-alls. The first phrase refers to wrongful acts. The related claims provision includes interrelated wrongful acts, which then, specifically defined, instead of interrelated not being defined, it lays out wrongful acts that have a common nexus of any fact, circumstance, situation, etc. Then it also has an or phrase or the same or related facts, circumstances, or situations. So that's where he's saying that related is not defined. That's correct. And so I guess, and I can ask him this, but I guess his argument is, based on the Towne case, that that case says that you have to define related and interrelated. That's not what the Towne case says. The Towne case says the only word they were dealing with was interrelated and that that word, undefined, had been applied by other courts to not include situations because unless it was defined more broadly, and the court references the language we have here, and it says this language can apply when you have different claimants with different wrongful acts, but that are related, the court said there, if you had that language, we might find these claims related. The court said otherwise, if interrelated is not defined, it's defined narrowly and it does not encompass claims by different claimants for different wrongful acts. Here, interrelated is defined and it's defined broadly in the way that the court references in Hunter. Here, you have separately related facts, circumstances, or situations, and the term related, unlike interrelated, is defined by courts consistently in a broad manner to include logical or causal connections. You have interrelated, which courts have interpreted narrowly if it's undefined, but if it's defined, that definition is given its plain meaning as written, and we have related, which is an undefined term, but is a term understood in the case law as understood in common usage to embrace broadly logical or causal connections. We cited multiple circuit courts of appeals holding that related is unambiguous when it's undefined and that it encompasses logical or causal connections. Were those cases based on... It's just so broad. I mean, any fact. So you have the same company, the same management, that's a related... Is that related? I am struggling with figuring out here what the limiting principle is and how we would write this in a way that would limit the cases that would fall under this exception. I don't really think... It does seem, with the fact that we've been struggling with it, suggests that there's ambiguity. Well, Your Honor, if you apply it to the facts of this case, and you look at the allegations in the securities class action and how heavily they are reliant on the same allegations and the antitrust actions, they practically mirror each other. And then they similarly say, like the antitrust class actions, that GELD concealed its anti-competitive conduct from the public. There is shared facts. They are logically or causally connected. They're also just simply causally connected because in order to lie about not having committed anti-competitive conduct, you had to actually commit that anti-competitive conduct. So you're asking us to make a finding of fact and we're on summary judgment and we have to construe the facts in favor of the non-moving party. So why is summary judgment even appropriate if we're talking about facts here? It's a fact-intensive inquiry, but the facts are entirely undisputed, Your Honor. You can read the joint appendix. You can read the securities class action amended complaint. You can read the pleadings from the antitrust actions. And nobody's fighting about, when you read the briefs, other than what my colleague says up on the stand, when you read the briefs and you look at the joint appendix and you look at the facts alleged in these actions, they are intertwined and you could not have for this case absent the antitrust violations that are alleged in the antitrust actions. He has this argument that these directors, and I'm sure you heard me ask him earlier, the names, I'm trying to find the names, is it Beck and Mallard, they've never been sued and basically this tells you that this is a separate action, the officers and directors. So two points on that. The related claims provision operates as to all claims and it doesn't matter as the courts have held in numerous cases, including in Stort Engineering from this court and the WC case from this court, the Highwood Properties case from the Eighth Circuit, which was cited in Stort. The exact identity of the defendants is not controlling at all and in fact, because the provision here relates all claims and a claim is against any insured, furthermore, the antitrust actions were specifically and repeatedly referring to Mr. Hetchikian who is the lead officer in the company. Additionally, in talking about the companies, Gellblom Inc. and Gellblom Holdings and talking about them as alter egos and talking about the company acting through the directors and officers identify these individuals. Furthermore, in the securities class action where the pleading passed the heightened pleading standards of the PSLRA with the district court, the court had to find that adequate pleading of scienter by each of the individuals was alleged and in fact, the court found that saying, this is all about pricing. The pricing of your door skins and the pricing of your doors and these are all the CEO and the CFO. They all had to know about pricing and they made representations about pricing. So, the court had no problem finding that they were adequately aware of what was going on in dealing with their with the consumers and engaging in anti-competitive conduct. So, back to Judge Berner's question about well, we have a securities claim. Well, let me get back to this on ambiguity. My colleague, when he talks about ambiguity, he says, well, it can be in two situations but he doesn't explain applying these phrases which have been accepted as unambiguous by numerous courts. What is the interpretation you give them such that the shareholder claims are not related to the antitrust claims? What, how is he reading the specific wording? They're not just, respectfully, it's not just a garden salad of words. They are words that have meaning. They have broad meaning. Do they have different meanings? The words from each other? All of them? Well, they build on each other and they're, in some respects, belt and suspenders. But, yes, they, so, for example, you have a phrase about you have, you have applying to any interrelated wrongful acts, so claims for any interrelated wrongful acts and then defining any interrelated wrongful acts. And then it's claims, regardless of wrongful acts whatsoever, related facts,  or situations. So there's overlap but they apply differently within the related claims provision. And then you have a separate, which you could consider for affirmance as well, a prior notice exclusion. And there was prior notice here. And the claim arises out of or in any way relates to circumstances that were specifically noticed by jailed to the proceeding management liability policy tower. And, contrary to what counsel says again and again, there's no evidence that any of the underlying insurers did any analysis like this. They were on both towers and the only carrier who ultimately disagreed was Old Republic and jailed settled with Old Republic. And I would further point out that while counsel talks about personal liability, there's no personal liability here. This is jailed seeking to collect additional money from travelers. All of the underlying claims were paid for either by insurance or by jailed. So it was either indemnified or by the company or by insurance. So... Question. So, I'm looking at the exclusion provision. So, let's just say this court says that related facts should have been defined. And that makes that portion ambiguous. Does it matter that all claims because here, which is a little different than in that Hunter versus Town case, it says all claims for the same wrongful act and interrelated wrongful acts and here we have interrelated acts that are defined. Does that make a difference? It does, Your Honor. Because interrelated, you have a clause that you first would look at would be the interrelated clause definition. Does that fit this situation? It does. Alternatively, you can look at the related facts or circumstances and if the court were to find that ambiguous, it would be disagreeing with all the other circuit courts and I think including this court that has implied the term related as unambiguous when undefined. It is defined broadly to include logical or causal connections. So, you would be disagreeing with all these other courts that related by concluding that related when it's undefined is ambiguous. Thank you. Thank you, Your Honor. Thank you. First of all, there's a case, there's a related case in the world to stand for every single proposition. It is not true or accurate that all courts have found these provisions to be unambiguous and there's two ways of looking at this. One is a finding of ambiguity where the other one is simply to say that it's unambiguous, however, it's not related. Again, this is a matter of perspective because it's so malleable that it really becomes an open option for an insurance company in a given case to decide which way it wants to go. So, the question that I asked him, in looking at this provision because I'm looking at the provision in Hunter v. Town, in that case, it just says any related wrongful acts. Here, interrelated, I'm sorry, wrongful acts. Here, it says all claims for the same wrongful act, any interrelated wrongful acts, or the same or related facts, circumstances,  shall be deemed to be a single claim. So, if we were to agree with you that related is ambiguous, we still have the other provisions of this exclusion, same wrongful act and any interrelated wrongful acts. And if we were just to look at that, here, unlike in the Hunter case, interrelated wrongful acts is defined. And he's saying it's defined just as the court pretty much instructed in Hunter. This is an exclusion that contains two standards. There's the interrelated wrongful act standard and then there's the disjunctive term or, which counsel emphasizes as saying, if you don't like interrelated wrongful acts, then we can ratchet it back to any related fact or circumstance. If we're going to look at this from a perspective of any related fact or circumstance, then we render superfluous everything that came before. We have two different standards. One thing I think we can all agree on is that interrelated and related cannot mean the same thing in the same provision. That's a basic tenet of North Carolina interpretive law. These words must mean something different, which is really what Town of Moxville is about. One of the concerns of this court in Town of Moxville was that as these two provisions were defined by the district court, there was no daylight between the two. And here, below, this district court defined common nexus to mean logically or causally connected. In the same opinion, at the same joint appendix page, the court defined related to mean a causal or logical connection. The court defined these terms to mean exactly the same thing, and they coexist in the same provision. It's really a problem with this idea that the carrier gets sort of this moving target option. If you don't like the narrow, then we can slowly proceed to the broadest any related act. At some point, that kind of language swallows the insuring agreement. Again, here we talk about dedicated,   securities claim coverage. Antitrust misconduct is not covered in these policies. Jeldwen paid $124 million for its antitrust exposure. Jeldwen paid the  What Traveler seeks to accomplish here is to have Jeldwen pay even more. And the fact that Jeldwen Holding has the wherewithal to indemnify its officers and directors here doesn't really answer the insurance question, because in many cases, the employer will not have the money to indemnify its directors and officers. And again, Mr. Beck, Mr. Hashigian, these folks, this is the first time. This is the first time they were sued, but that's back to my question I asked you earlier, and I went back and looked at the  And there's that chart in there, which I think is J.A. 491 or 4, where it well, on J.A. 500, where it says defendants by and through their officers,  employees, agents, and other representatives have engaged in a continuing agreement understanding and conspiracy in restraint of trade to artificially raise, fix,  and stabilize the prices of interior model doors in the United States. Then, on J.A., I believe it's 492 through 93, if I'm correct, it names all of the officers and  including Mr. Beck and Mr. Mallard. These are folks that were alleged to have committed securities misrepresentations. They are not the individuals that were alleged to have engaged in antitrust conduct. Those folks are Orsino, Merrill, Mercier, and Fancher. Those are different directors. So when you read the securities complaint, absolutely, Beck, Mallard, Hashigian. I'm referring to the direct, the suit from,  it's 2000. In a direct purchase suit that was previously, in that suit, the names on J.A. 5, if you look at the J.A., the names are listed in there. I will look at that, Your Honor. One of the reasons why in the briefing you don't see these same references is because all these  officers, and directors, these folks are protected by securities claim coverage. They've never been sued before. It's asking a lot to swallow up a dedicated securities claim insuring agreement to merge every time that insuring agreement back into prior conduct that's not covered. Thank you. Thank you all for your time this  We will step down, but I will ask the clerk to adjourn court. And, once again, if you can greet Judge Floyd up here on the bench, that would be great. Thank you. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: DeAndrea Gist Benjamin, Nicole G. Berner, Henry F. Floyd